IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TERRY M. TURNER, | ) | CIVIL NO. 06-00616 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER: (1) GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT; AND |
| | ) | (2) DENYING PLAINTIFF'S |
| CITY AND COUNTY OF | ) | CROSS-MOTION FOR SUMMARY |
| HONOLULU; JOHN DOE | ) | JUDGMENT |
| PROSECUTOR; JOHN DOE LEGAL | ) | |
| REPRESENTATIVE OF CHARLES | ) | |
| MARSLAND'S ESTATE; EDWIN | ) | |
| SHIMODA WARDEN OCCC; JOHN | ) | |
| DOE DIRECTOR OF PUBLIC | ) | |
| SAFETY; JOHN DOE WARDEN | ) | |
| HALAWA PRISON; JOHN DOE | ) | |
| LEGAL REPRESENTATIVE OF | ) | |
| WILLIAM OKU'S ESTATE; | ) | |
| JENNIFER CHING, DEPUTY | ) | |
| PROSECUTING ATTORNEY; ALL | ) | |
| IN THEIR INDIVIDUAL AND | ) | |
| OFFICIAL CAPACITIES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

In his Second Amended Complaint ("SAC"), Plaintiff Terry M.

Turner ("Plaintiff") alleges claims against Defendants City and County of

Honolulu ("City") and Deputy Prosecuting Attorney Jennifer Ching ("Ching"),

(collectively "Defendants"),[1] for violation of his constitutional rights and for

negligence in handling Plaintiff's criminal prosecution in 1984, and sentencing in

another matter in 1995.  Defendants request summary judgment on the grounds

that Plaintiff's claims are time-barred, and Plaintiff has not established a genuine

issue of material fact in support of his claims.  Plaintiff seeks summary judgment

on all counts of the SAC.[2]  Based on the following, the court GRANTS

Defendants' Motion for Summary Judgment, and DENIES Plaintiff's Cross-

Motion for Summary Judgment because Plaintiff's claims against Defendants are

time-barred as a matter of law.

///

///

///

///

---

[1]  The SAC also alleges claims against John Doe Prosecutor, John Doe Legal Representative of Charles Marsland's Estate, Edwin Shimoda Warden OCCC, John Doe Director of Public Safety, John Doe Warden Halawa Prison, and John Doe Legal Representative of William Oku's Estate.  Because it appears that none of these individuals has been served with the SAC, the court addresses only those arguments raised by the City and Ching and refers to them as "Defendants."

[2]  Pursuant to Local Rule 7.2(d), the court finds these motions to be suitable for disposition without a hearing.

## II. **BACKGROUND**

A.    **Factual Background**

1.    *Plaintiff's Allegations*

The court set forth the relevant factual background relating to

Plaintiff's claims in its May 3, 2007 Order denying Plaintiff's Motion for

Summary Judgment on his original Complaint ("May 3, 2007 Order"):

> On July 2, 1984, Plaintiff pled guilty to assault in the first degree in Hawaii State Court, Criminal No. 56933.[3]  Ching was the deputy prosecuting attorney assigned to the case. Plaintiff claims that he was mentally ill when he pled guilty in 1984.
>
> In 1998, Magistrate Judge Barry M. Kurren granted Plaintiff's petition for habeas corpus, finding that Plaintiff's 1984 guilty plea was invalid.  Pl's. Mot. Summ. J. Ex. A ("Pl's. Ex. A") 12.  Judge Kurren found that the State of Hawaii failed to inform Plaintiff's counsel or the trial judge who took his plea that Plaintiff was treated for mental illness while incarcerated (before he pled guilty in Criminal No. 56933), and that around the time Plaintiff entered his guilty plea, he experienced and exhibited some behavior consistent with a diagnosis of severe mental illness.  *Id.* at 7.  The court also found that Plaintiff was unaware of his mental illness at that time and for several years following his guilty plea.  *Id.* at 13.
>
> Plaintiff now alleges that Ching withheld information concerning his mental illness from Plaintiff, his defense counsel, and the judge who took his guilty plea.  Plaintiff also

---

[3] Plaintiff was charged with rape in the first degree, assault in the third degree, terroristic threatening in the first degree, and kidnapping.  *See* Pl's Mot. Summ. J. Ex. A ("Pl's. Ex. A") 1. After Plaintiff entered a guilty plea to the assault charge, he was sentenced to time served and probation.  *Id.* at 2.  Plaintiff's probation was revoked in 1986 and he was sentenced to a term of 10 years.  *Id.*

claims that Ching improperly used evidence introduced during
an earlier trial resulting in an acquittal to induce him to enter
his July 2, 1984 plea of guilty.

May 3, 2007 Order, 2-3.

In comparison, Defendants assert that Ching (1) did not know or

suspect that Plaintiff was mentally ill, Ching Decl. ¶ 4(a); (2) did not know that

Plaintiff was being treated for mental illness, *id.* ¶ 4(b); and (3) did not have any

suggestion or indication that Plaintiff was suffering from any mental illness. *Id.*

¶ 4(e).

In addition to these allegations, Plaintiff asserts (without any apparent

evidentiary support) that Ching testified falsely against him in 1995. SAC, claims

1-2. Plaintiff further asserts that the City had a longstanding practice of not

allowing access to prisoners' medical records. *Id.*, claim 9.

### 2. *Plaintiff's Incarcerations and Mental Illness*

Plaintiff has had a long history of mental illness, and has spent

significant time in prison.[4] In Criminal No. 56933, Plaintiff was admitted to the

Oahu Community Correctional Center for pre-trial from 1982 until 1984. Pl.'s Ex.

D, 181. During this time, Plaintiff was "diagnosed with a mental illness of

---

[4] Neither party provided a clear timeline of Plaintiff's incarcerations and mental illness.
The court therefore bases the following history in large part on recent medical professionals'
reports that recount Plaintiff's recitation of these events.

4

paranoid nature." *Id.* In 1984, Plaintiff pled guilty, and was sentenced to time served plus a period of probation. *See* Ching Decl. ¶ 4.

In September 1986, Plaintiff's probation was revoked in Criminal No. 56933, and Plaintiff was resentenced to a prison term of ten years. *Id.* ¶ 4(g). Plaintiff was incarcerated at Halawa Correctional Facility, and placed in the "Hole" for nine years until 1995. Pl.'s Ex. D, 181. Plaintiff was acutely paranoid this entire time, experienced both auditory and visual hallucinations, and believed that the guards were planning to kill him, his second wife and daughter. *Id.* Plaintiff was released from the Hole in 1995, but stayed imprisoned until 1997. *Id.* Plaintiff's paranoia substantially lessened, and he was treated with Haldol and Thorazine. *Id.* at 181-82.

In 1998, Plaintiff was re-incarcerated. Defs.' Ex. D, 182. In 1999, Plaintiff met with several mental health professionals to determine his diagnostic state and fitness to proceed at trial. *See* Defs.' Ex. D, 161-71. Plaintiff was diagnosed with schizoaffective disorder, but found fit to proceed to trial. *Id.* Specifically, Plaintiff was found to have "the ability to understand the proceedings against him and the ability to assist his attorney with a reasonable degree of rational understanding." *Id.* at 165-66; *see also id.* at 167 (stating that Plaintiff has "sufficient presentability and a reasonable degree of rational understanding and

sufficient factual understanding of the proceedings that have been initiated against him."). While incarcerated, Plaintiff still suffered from his mental illness, and was treated with Zyprexa. Defs.' Ex. D, 182.

Plaintiff was released from prison on January 22, 2004, and finished his parole on October 5, 2005. Defs.' Opp'n Ex. D. After leaving prison, Plaintiff continued treatment for his mental illness. In January 2004, Plaintiff reported that he had not experienced auditory or visual hallucinations for about a year, but believed he could read people's thoughts and that a page in the Bible had a special message for him. Pl.'s Ex. D. In a March 5, 2004 report, Dr. Valerie Brandon, Plaintiff's treating physician since 1997, reviewed his life history and diagnosed Plaintiff with paranoid schizophrenia. Defs.' Ex. D, 182. Dr. Brandon found that Plaintiff was stable and reacting favorably to a combination of Zyprexa and Strattera. *See* Defs.' Ex. D, 183. Dr. Brandon stated that "[a]fter less than a month of taking Strattera, [Plaintiff] has noticed that there is a marked improvement in his concentration and focus." Pl.'s Ex. D, 182. Dr. Brandon found that "[o]n this combination of medications . . . [Plaintiff] is free of his paranoid symptoms of auditory hallucinations, paranoid delusions, and excessive suspiciousness. His presentation now of range of affect, eye contact, hygiene, grooming, and speech all fall within the normal/average range." *Id.* The report

notes, however, that "this facade of normality does <u>NOT</u> rule out his potential to relapse into an acute paranoid state." *Id.*  Indeed, on May 13, 2004, Dr. Brandon noted that Plaintiff had stopped taking Zyprexa, and has a "propensity to lapse into paranoid delusional thinking."  Pl.'s Ex. B; *see also* Defs.' Ex. F, 255 (stating that as of May 11, 2005, Plaintiff reported having experienced psychological or emotional problems on 30 days during the past 30 days); Pl.'s Ex. C (noting that Plaintiff lacks insight to his mental illness and may need prompting to take his medication).

Despite Plaintiff's history of mental illness, Plaintiff has shown an ability to advocate for his rights.  In addition to successfully petitioning for habeas corpus before Magistrate Judge Kurren in 1998 (discussed above), Plaintiff more recently ensured his receipt of disability insurance benefits with the Social Security Administration.  *See* Pl.'s Ex. E.  Plaintiff filed his initial application on July 1, 2004.  *Id.*  The claim was denied and Plaintiff filed an appeal, choosing to proceed without the assistance of an attorney.  *Id.*  In 2006, the Social Security Administration Office of Hearings and Appeals ruled in Plaintiff's favor.  *Id.*

## B.    Procedural History

On November 17, 2006, Plaintiff filed his Complaint alleging claims against the Defendants for violation of his constitutional rights and for negligence

7

based on Ching's failure to disclose information regarding his mental illness during the 1984 prosecution and improper inducement of his plea.  On January 29, 2007, Defendants filed a motion to dismiss.  On February 7, 2007, Plaintiff filed a motion for summary judgment, and a memorandum in support of the motion on February 20, 2007.  On May 3, 2007, the court granted Defendants' motion to dismiss, and denied Plaintiff's motion for summary judgment.  Except for Plaintiff's § 1983 claim against Ching, the court dismissed Plaintiff's claims without prejudice.

On May 14, 2007, Plaintiff filed a First Amended Complaint, which Defendants answered on May 24, 2007.  On September 4, 2007, Plaintiff filed a Second Amended Complaint, which the court construed as a Motion to file a Second Amended Complaint.  This proposed Second Amended Complaint stated claims against Ching, the City, and several other parties for violations of his constitutional and Hawaii state constitutional rights, and for negligence.  On October 30, 2007, Magistrate Judge Kobayashi granted Plaintiff's Motion to File a Second Amended Complaint, with several exceptions, including that Plaintiff could not allege a § 1983 claim against the named individual defendants, and that Plaintiff could not add any new facts or claims other than those identified in the Proposed Second Amended Complaint.  On November 13, 2007, Plaintiff filed his

8

SAC, which states claims against Ching, John Doe Prosecutor, John Doe legal representatives of Charles Marsland's estate, Edwin Shimoda, John Doe Warden Halawa Prison, John Doe legal representative of William Oku's estate, and John Doe Director of Public Safety for violations of his Hawaii state constitutional rights and negligence, and a claim against the City for violation of his § 1983 rights and state law rights.

On February 4, 2008, Defendants filed a Motion for Summary Judgment. On February 20, 2008, Plaintiff filed a Cross-Motion for Summary Judgment. These motions were set for hearing on March 24, 2008. On March 12, 2008, after receiving no additional briefing, the court informed the parties that it would decide the pending motions without a hearing. That same day, Defendants filed a Motion for Extension of Time, and an Opposition to Plaintiff's Cross-Motion. On March 13, 2008, the court granted Defendants' Motion for Extension of Time. On March 21, 2008, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment. On March 28, 2008, Defendants filed a Reply.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 316, 321 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party may discharge its burden by showing that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual

dispute affects the outcome of the claim or defense under substantive law

governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d

912, 919 (9th Cir. 2001).  When considering the evidence on a motion for

summary judgment, the court must draw all reasonable inferences on behalf of the

nonmoving party.[5]  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  **ANALYSIS**

Plaintiff asserts claims against Defendants that are based on events

that occurred in the 1980s and 1990s.  Plaintiff nonetheless asserts that he timely

brought his November 17, 2006 Complaint because the statute of limitations was

tolled due to his incarcerations and insanity.  In comparison, Defendants argue that

Plaintiff's claims are subject to a two-year statute of limitations, which began to

run no later than March 2004,[6] and which bars all of Plaintiff's claims.  The court

concurs with Defendants.

In the court's May 3, 2007 Order, the court found that Plaintiff's

---

[5]  Plaintiff is appearing pro se; consequently, the court will liberally construe his pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

[6]  Defendants assert that they are using "March 2004 as the date when Plaintiff became competent," Defs.' Mot. 10 n.4, but also discuss Plaintiff's sanity for periods in the 1990s.  *Id.* at 11-12.  Because the court finds no genuine issue of material fact regarding Plaintiff's sanity as of March 2004, the court limits its analysis to this time period.

§ 1983 claim was subject to Hawaii's two-year statute of limitations for personal injury actions, Hawaii Revised Statutes ("HRS") § 657-7. *See* May 3, 2007 Order, 5 n.3. Further, because Plaintiff's claims for violation of Hawaii state constitutional rights and negligence also sound in tort, the court applies this two-year statute of limitations to all of Plaintiff's claims. Accordingly, at trial Plaintiff has the burden to show that the statute of limitations was tolled until November 17, 2004, two years before he filed his Complaint. *See Otokichi v. Sekijiro*, 23 Haw. 234, 1916 WL 1428, at *3 (Haw. Terr. 1916) ("It is admitted that under the authorities, when the statute of limitations is pleaded by the defendant as a defense, that the burden is upon the plaintiff to reply and to prove that his case, if *prima facie* barred, comes within one of the exceptions taking the case out of the statute."); *see also Bond v. United States*, 43 Fed. Cl. 346, 349 (Fed. Cl. 1999) ("To maintain a claim of legal disability to toll the statute of limitations, the plaintiff must bear a heavy burden as the law presumes sanity and competency rather than insanity and incompetency." (citation and quotation signals omitted)).

Hawaii's tolling provision, HRS § 657-13, states as follows:

If any person entitled to bring any action specified in this part . . . is, at the time the cause of action accrued, either:
    (1) Within the age of eighteen years; or,
    (2) Insane; or,

(3) Imprisoned on a criminal charge, or in execution
under the sentence of a criminal court for a term less than
the person's natural life;

such person shall be at liberty to bring such actions within the
respective times limited in this part, after the disability is
removed or at any time while the disability exists.

Neither party discusses application of the tolling provision --

specifically, whether Plaintiff must prove a continuing disability from the time his

claims accrued, or whether reoccurrences of disabilities may further toll the statute

of limitations.  Section 657-13 is unambiguous -- the statute of limitations is tolled

only for disabilities that exist "at the time the cause of action accrued."  Thus,

once that disability is removed, the statute of limitations begins and will not toll

for later disabilities.[7]  *See Gowin v. Altmiller*, 663 F.2d 820, 823 (9th Cir. 1981)

("[A]uthority from other states is apparently unanimous that such a statutory

provision does not toll limitations for causes of action already in existence when

the imprisonment began."); *Williams v. Coughlan*, 244 F.2d 6, 8 (9th Cir. 1957)

("[T]he statute of limitations on the present claims was not tolled under that

section during this latter period of imprisonment because that section tolls the

---

[7] At least one state, Kansas, allows disabilities that occur after a plaintiff's claims accrue to toll the statute of limitations.  *See Lewis v. Shuck*, 623 P.2d 520, 523 (Kan. 1981) (noting that "the Kansas provision differs from statutes of other states in that Kansas prescribes a grace period not only for persons imprisoned at the time a cause of action accrues, but also where imprisonment commences at any time during the running of the statute of limitations").  Unlike HRS § 657-13, the Kansas statute tolls the limitations period for disabilities that exist "'at the time the cause of action accrued, or at any time during the period the statute of limitations is running.'"  *Id.* (*quoting* K.S.A. § 60-515(a)).

statute only during the continuance of the disability which existed at the time the cause of action arose."); *Gutierrez v. D.K. Butler*, 2008 WL 436948, at *2 (E.D. Cal. Feb. 14, 2008) ("A limitation period is not suspended by a disability or impediment to suit arising after the period commenced running."); *Gamba v. Woodford*, 2007 WL 2481746, at *3 (E.D. Cal. Aug. 29, 2007) (stating that the plaintiff must prove that he was continuously insane from the time his cause of action accrued, and noting that his "current and past filings in this court demonstrate he was able to file civil cases on his own behalf").

Assuming that Plaintiff was both imprisoned and insane at the time his claims accrued, the court finds that neither of these disabilities, whether taken separately or together, tolls the statute of limitations as late as November 17, 2004 (two years prior to the filing of the November 17, 2006 Complaint).  First, as a matter of law, Plaintiff's various imprisonments do not toll the statute of limitations until November 17, 2004.  Plaintiff was released from prison on January 22, 2004, and his parole ended on October 5, 2005.  Defs.' Ex. D.  Parole is not a basis to toll the statute of limitations.  *See* HRS § 657-13 (listing only infancy, insanity, and imprisonment as disabilities); *see also Boag v. Chief of Police, City of Portland*, 669 F.2d 587, 589 (9th Cir. 1982) (finding that under Oregon statute of limitations statute, plaintiff's "disability of imprisonment

14

'ceased' when he was paroled in 1977").  Second, Plaintiff was not continuously imprisoned from the 1980s through 2004.  Plaintiff was released from 1984-1986 and in 1998.  *See* Defs.' Ex. D (recounting Plaintiff's life history).  Either of these releases would start the statute of limitations unless Plaintiff could take benefit of another disability that had existed and continued to exist since his claims accrued. *See* HRS § 657-15 ("Where there are two or more such disabilities existing at the time the right of action accrued, the limitations herein prescribed shall not attach until all the disabilities are removed.").  A subsequent prison sentence, however, would not further toll the statute of limitations because it did not exist at the time his claims accrued.  *See Gowin*, 663 F.2d at 823 (9th Cir. 1981) (finding that imprisonment that occurs after cause of action accrues does not toll the statute of limitations); *Williams*, 244 F.2d at 8 (same).  Accordingly, Plaintiff's claims are time-barred unless he was continuously insane from the time his claims accrued until November 17, 2004.

Viewing the evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has not raised a genuine issue of material fact that he was legally insane from the time his claims accrued until November 17, 2004. Although the HRS does not define the meaning of "insane," the Hawaii Supreme Court discussed its contours:

15

> [J]urisdictions examining the meaning of insanity in the context of tolling the statute of limitations have liberally defined the term as: (1) the inability to understand one's legal rights or manage one's affairs; (2) the inability to understand the nature or effect of one's acts; or (3) the inability to carry out one's business and prosecute the claim.

*Buck v. Miles*, 89 Haw. 244, 252, 971 P.2d 717, 725 (1999) (citations omitted); *see also Christian v. Waialua Agric. Co.*, 31 Haw. 817, 1931 WL 2823, at *41 (Haw. Terr. Apr. 18, 1931) (defining "insanity" as "a broad, comprehensive, and generic term, of ambiguous import, for all unsound and deranged conditions of the mind" and finding for contract actions that "[t]he proper inquiry is whether he was capable of understanding and appreciating the nature and effect of the one particular act or transaction which is challenged").

On March 5, 2004, Dr. Brandon, Plaintiff's treating physician since 1997, issued a report stating that she started Plaintiff on Strattera on February 12, 2004, and that "[a]fter less than a month of taking Strattera, [Plaintiff] has noticed that there is a marked improvement in his concentration and focus." Defs.' Ex. D, 182. Dr. Brandon concluded that "[o]n this combination of medications . . . [Plaintiff] is free of his paranoid symptoms of auditory hallucinations, paranoid delusions, and excessive suspiciousness. His presentation now of range of affect, eye contact, hygiene, grooming, and speech all fall within the normal/average

range." *Id.* With no symptoms as of March 5, 2004, Plaintiff cannot readily argue that at this time his mental illness prevented him from understanding his legal rights, carrying out his business, and prosecuting his claims.

The conclusion that Plaintiff could carry out his business and prosecute his claims is confirmed by the fact that Plaintiff applied for Social Security benefits and successfully appealed pro se. Plaintiff used Dr. Brandon's March 5, 2004 report in support of his July 1, 2004 application for disability insurance benefits with the Social Security Administration. *See* Pl.'s Ex. E. The claim was denied and Plaintiff filed an appeal, choosing to proceed without the assistance of an attorney. *Id.* In 2006, the Social Security Administration Office of Hearings and Appeals ruled in Plaintiff's favor. *Id.*

These facts establish that Plaintiff was able to understand his legal rights, carry out his business and prosecute his claims by March 5, 2004, and certainly by July 2004 when he sought disability benefits. Plaintiff's disability was therefore removed (even if only temporarily) for the purposes of HRS § 657-13. Even if Plaintiff's symptoms later recurred, the statute of limitations had already begun by at least March 5, 2004, and any later insanity would not further toll the statute of limitations. *See Gamba*, 2007 WL 2481746, at *3 (finding that Plaintiff failed to prove that he was continuously insane from the time his cause of

17

action accrued).  Plaintiff did not file his Complaint until November 17, 2006 --

more than two-years after either March 4, 2004 or July 1, 2004.  Plaintiff therefore

brought his claims after the statute of limitations expired.

None of the evidence submitted by Plaintiff raises a genuine issue of

material fact of his insanity in March or July 2004.  Specifically, Plaintiff

submitted a number of exhibits regarding his treatment for and symptoms of

paranoid schizophrenia, but none of them indicates that Plaintiff was unable to

understand his rights and prosecute his claims.  These exhibits show, for instance,

that (1) in January 2004, Plaintiff believed he could read people's thoughts and

that a page in the Bible had a special message for him, Pl.'s Ex. D; (2) Plaintiff has

a "propensity to lapse into paranoid delusional thinking," which occurred on May

13, 2004 after he stopped taking Zyprexa, Pl.'s Ex. B; (3) Plaintiff meets with

individuals at Helping Hands Hawaii, where they have noted that Plaintiff is

diagnosed with chronic paranoid schizophrenia, lacks insight to his mental illness,

and may need prompting to take his medication, Pl.'s Ex. C; (4) Plaintiff has had

trouble maintaining employment, Pl.'s Ex. E; and (5) the Department of Veterans

Affairs determined in 2007 that "it is not reasonable to expect [Plaintiff] to be able

to train for or get a suitable job at this time."  Pl.'s Ex. F.  At most, these exhibits

confirm Plaintiff's diagnosis of paranoid schizophrenia; they do not, however,

18

raise a fact issue that Plaintiff meets the standard of "insanity" necessary to toll the statute of limitations.[8]  *See Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir. 1993) (noting that a court cannot rely on diagnosis alone to determine whether a plaintiff is able to protect his legal rights); *Nelson v. Reddy*, 898 F. Supp. 409, 411 (N.D. Tex. 1995) ("[Plaintiff] had presented no evidence of a judicial determination of incompetence nor has he presented any professional's diagnosis that he was mentally incompetent at any time.  Accepting as true [Plaintiff's] statement that he was under the care of mental health professionals and received drug therapy, these factors do not establish that he was a person of 'unsound mind' consonant with the Texas state courts' interpretation of this term."); *Dumas v. Agency for Child Dev.-N.Y. Head Start*, 569 F. Supp. 831, 833 (S.D.N.Y. 1983) (stating that a diagnosis of "schizophrenia, paranoid, chronic with acute exacerbation DSM III 295.34" did not result in tolling because her disability "was not of the severe and incapacitating nature contemplated by the tolling statute. The statute speaks in terms of insanity, not merely mental illness ").

---

[8]  Plaintiff asserts that his exhibits are "from medical experts who are willing to come to court to testify as to Plaintiff's mental health concerning whether or not his illness ended."  Pl.'s Opp'n 1-2.  Plaintiff's opportunity to submit such evidence, however, is on summary judgment. Indeed, Plaintiff recognized that an affidavit from a doctor could be sufficient to raise a fact issue on summary judgment, but submitted none.  *See* Pl.'s Opp'n, 6 ("Doctor's Affidavits were sufficient to invoke a tolling provision contained in this section, where a genuine issue of material fact as to whether stroke victim had been rendered incompetent by stroke had been created." (*citing Buck v. Miles*, 89 Haw. 244, 971 P.2d 717 (1999)).

Finally, as an alternative basis for its decision, the court finds that Plaintiff's claims are barred by the statute of limitations by Plaintiff's own failure to answer Requests for Admissions asking him to admit that "[a]s of March 2004, you were free of paranoid symptoms of auditory hallucinations, paranoid delusions, and excessive suspiciousness."  Defs.' Ex. C, Req. No. 7.  Defendants served these Requests on June 14, 2007, and to date, have not received any response.  Pursuant to Federal Rule of Civil Procedure 36(a)(3), this request is deemed admitted.  While Plaintiff asserts that he "cannot recall ever getting any admissions from the Defendants and if he did it is the very illness that the Defendants say Plaintiff [doesn't] have is why he did not respond," Pl.'s Mot. 2, Plaintiff chose to file this action pro se, and cannot use "insanity" as a defense for ignoring the Federal Rules of Civil Procedure that govern this action.  *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law.").  Accordingly, the court finds that Plaintiff's own admission that he was free of paranoid symptoms of auditory hallucinations, paranoid delusions, and excessive suspiciousness as of March 2004 makes his claims untimely.[9]

---

[9]  Because the court finds that Plaintiff's claims are time-barred, the court does not address the parties' other arguments for summary judgment.

# V.  <u>CONCLUSION</u>

For these reasons stated above, the court GRANTS Defendants'

Motion for Summary Judgment, and DENIES Plaintiff's Motion for Summary

Judgment on the basis that Plaintiff's claims are barred by the statute of

limitations.  The claims against the other Defendants remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 23, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Turner v. City & County of Honolulu et al.*, Civ. No. 06-00616 JMS/LEK; Order: (1) Granting Defendants' Motion for Summary Judgment; and (2) Denying Plaintiff's Cross-Motion for Summary Judgment